UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| CHRISTOPHER G. STALCUP, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| *vs.* | ) | 1:11-cv-0486-JMS-DKL |
| | ) | |
| MICHAEL ASTRUE, | ) | |
| COMMISSIONER OF THE SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | |
| | ) | |
| *Defendant.* | ) | |

## <u>ENTRY REVIEWING THE COMMISSIONER'S DECISION</u>

Plaintiff Christopher G. Stalcup applied for Supplemental Security Income from the Social Security Administration on February 11, 2005. His application was denied both initially and upon reconsideration by the Defendant, Commissioner of the Social Security Administration ("<u>the Commissioner</u>"). Administrative Law Judge George Jacobs ("<u>ALJ</u>") held a hearing in March 2008 and later issued a finding that Mr. Stalcup was not entitled to disability benefits. Mr. Stalcup has filed this action under 42 U.S.C. § 405(g), asking the Court to review his denial of benefits.

## I.
### RELEVANT BACKGROUND

Mr. Stalcup was twenty-five years old at the time of his disability application on February 11, 2005. [R. 17, 64.] He has an eighth grade education and has obtained a G.E.D. but has no prior relevant work history. [R. 64.] Mr. Stalcup claims he is disabled because of the effects of schizophrenia, depression, anxiety, bipolar disorder, and glaucoma. [R. 106.]

In relevant part, Mr. Stalcup's medical history includes hospitalizations for reporting suicidal and homicidal ideations, hallucinations, and substance abuse. [R. 220.] At various

- 1 -

times he has been diagnosed with intermittent explosive disorder, antisocial personality disorder, methamphetamine-induced psychosis with hallucinations and delusion, alcohol/marijuana abuse, probable antisocial personality disorder, and psychosis NOS.  [R. 119, 190, 202, 219.]  Mr. Stalcup has used psychiatric medications with varying results.  [R. 131.]

Additional facts will be provided as necessary to review Mr. Stalcup's denial of benefits.

## II.
### STANDARD OF REVIEW

The Court's role in this action is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision.  *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted).  For the purpose of judicial review, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.* (quotation omitted).  Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008), this Court must afford the ALJ's credibility determination "considerable deference," overturning it only if it is "patently wrong." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006). (quotations omitted).

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court *must* affirm the denial of benefits.  Otherwise the Court will remand the matter back to the Social Security Administration for further consideration; only in rare cases can the Court actually order an award of benefits.  *See Briscoe v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005).

To evaluate a disability claim, an ALJ must use the following five-step inquiry:

(1) [is] the claimant…currently employed, (2) [does] the claimant ha[ve] a severe impairment, (3) [is] the claimant's impairment…one that the Commissioner considers conclusively disabling, (4) if the claimant does not have a conclusively

disabling impairment,…can [he] perform h[is] past relevant work, and (5) is the claimant…capable of performing any work in the national economy[?]

*Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001) (citations omitted). After step three, but before step four, the ALJ must determine a claimant's Residual Functional Capacity ("RFC"), which represents the claimant's physical and mental abilities considering all of the claimant's impairments. The ALJ uses the RFC at step four to determine whether the claimant can perform his own past relevant work and if not, at step five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 416.920(e).

## III.
### THE ALJ'S DECISION

Using the five-step sequential evaluation set forth by the Social Security Administration, the ALJ determined that Mr. Stalcup was not disabled.

At step one of the analysis, the ALJ found that Mr. Stalcup had not engaged in substantial gainful activity[1] since the alleged onset date of his disability. [R. 13.]

At step two, the ALJ identified two severe impairments[2] from which Mr. Stalcup suffers: affective disorder and personality disorder. [R. 13.]

At step three, the ALJ considered Listings 12.04 (affective disorders) and 12.09 (substance addiction disorders) but found that Mr. Stalcup's impairments did not meet or medically equal those listings. [R. 13.] In relevant part, the ALJ found that Mr. Stalcup's

---

[1] Substantial gainful activity is defined as work activity that is both substantial (i.e. involves significant physical or mental activities) and gainful (i.e. work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572(a) and § 4.16.972(a).

[2] An impairment is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. *See* 20 C.F.R. § 404.1520(c); 20 C.F.R. § 416.920(c).

impairments had not caused the required number of episodes of decompensation to meet or medically equal those listings.

At step four, the ALJ found that Mr. Stalcup had the RFC to perform a full range of work at all exertional levels but with non-exertional limitations limiting him to simple repetitive tasks without production rate pace but with goal-oriented work that has no more than occasional interaction with co-workers and supervisors and no contact with the public. [R. 14.] The ALJ concluded that Mr. Stalcup could not do past relevant work because he did not have past relevant work. [R. 17.] The ALJ summarized the evidence of Mr. Stalcup's mental impairments, diagnoses, and limitations and made an adverse credibility finding for reasons that will be detailed below. [R. 15-17.]

Finally, at step five, considering Mr. Stalcup's age, education, work experience, RFC, and the testimony of a vocational expert, the ALJ determined that jobs existed in the national economy that Mr. Stalcup could perform such as a copy machine operator, a cleaner, and a mail clerk. [R. 18.] Based on these findings, the ALJ concluded that Mr. Stalcup was not disabled.

## IV.
### DISCUSSION

Mr. Stalcup challenges the ALJ's decision for four reasons. First, Mr. Stalcup argues that the ALJ erred by failing to consider all of his severe impairments at step two. Second, Mr. Stalcup argues that the ALJ erred by failing to find that Mr. Stalcup's impairments met or medically equaled Listing 12.04 or Listing 12.09 and by failing to summon a medical expert regarding those listings. Third, Mr. Stalcup argues that the ALJ erred by making an adverse credibility determination. Finally, Mr. Stalcup argues that the ALJ should have asked him which aspects of work are stressful to him before including a low-stress limitation in the hypothetical presented to the vocational expert.

**A. Mr. Stalcup's Step Two Challenge**

Mr. Stalcup alleges that the ALJ committed reversible error at step two by failing to consider all of his severe impairments. Mr. Stalcup concedes that the ALJ found his affective disorder and personality disorder to be severe impairments, but he argues that the ALJ should have also considered his additional diagnosed mental illnesses to be severe impairments. [Dkt. 24 at 13 (listing other diagnoses Mr. Stalcup has received).]

Even assuming that the ALJ made an error at step two by not listing Mr. Stalcup's additional diagnoses as severe impairments, it does not matter. "Deciding whether impairments are severe at Step 2 is a threshold issue only; an ALJ must continue on to the remaining steps of the evaluation process as long as there exists even *one* severe impairment." *Arnett v. Astrue*, 2012 U.S. App. LEXIS 6557, *12 (7th Cir. 2012) (original emphasis) (citing *Castile v. Astrue*, 617 F.3d 923, 927-28 (7th Cir. 2010)). Because the ALJ considered two impairments to be severe and proceeded on to the other steps of the analysis, any error of omission at step two is harmless. *Id.*

**B. Listings 12.04 or 12.09**

Mr. Stalcup presents two challenges to the ALJ's conclusion that he did not meet or medically equal Listing 12.04 (affective disorders) or 12.09 (substance addiction disorders). First, Mr. Stalcup argues that the ALJ erroneously concluded that he has not experienced any episodes of decompensation, despite evidence to the contrary. Second, Mr. Stalcup argues that the ALJ should have summoned a medical expert to determine if he met the listings at issue.

**1. Episodes of Decompensation**

Mr. Stalcup contends that the evidence in the record shows that he meets or medically equals Listing 12.04 or 12.09.

A claimant is deemed disabled at step three if he has a condition with symptoms that meet or exceed the criteria of one or more listed impairments. 20 C.F.R. § 404.1520(d); 20 C.F.R. § 404 Subpt. P, App. 1. Alternatively, if the claimant's symptoms do not correspond exactly with a listing's requirements, he can still be deemed disabled if medical evidence establishes that his symptoms are equal in severity and duration to those of a listed impairment. 20 C.F.R. § 404.1526(a), (b). A claimant first has the burden to present medical findings that match or equal in severity all the criteria specified by a listing. *Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006); *Knox v. Astrue*, 327 Fed. Appx. 652, 655 (7th Cir. 2009) (citing *Ribaudo*). The ALJ should mention the specific listings he is considering; a failure to do so, if combined with a perfunctory analysis, may require a remand. *Ribaudo*, 458 F.3d at 583.

While administrative error may be harmless, the Court will not rationalize the ALJ's decision and substitute its own hypothetical explanations. *McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011). The Court must look at the evidence in the record to see if it can predict with great confidence what the result on remand would be without the error. *Id.*

In relevant part, Listing 12.04 and Listing 12.09 require a medically documented history of a chronic affective disorder lasting at least two years that has caused more than a minimal limitation of the ability to do basic work activities and "repeated episodes of decompensation, each of extended duration." Listing 12.04(C)(1) (incorporated by Listing 12.09). The term "repeated episodes of decompensation, each of extended duration" means "three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks." Listing 12.00(C)(4).

The ALJ considered whether Mr. Stalcup met or medically equaled Listings 12.04 or 12.09 and concluded that he did not. [R. 13.] Mr. Stalcup points to the ALJ's erroneous

conclusion that he has not experienced any episodes of decompensation, despite evidence to the contrary. [Dkt. 24 at 14 (citing R. 14).] Mr. Stalcup directs the Court to an evaluation by state agency psychological expert Dr. William Regan, which concludes that Mr. Stalcup suffered "one or two" episodes of decompensation before December 2005. [R. at 182, 188.]

The Court agrees with Mr. Stalcup that the ALJ erred in concluding that Mr. Stalcup had not suffered any episodes of decompensation without some explanation for why the contrary evidence in the record was rejected. The Court finds, however, that this error is harmless because no reasonable ALJ would reach a contrary decision on remand regarding Mr. Stalcup's failure to meet or medically equal Listing 12.04 or 12.09 even considering the evidence to which Mr. Stalcup directs the Court. *See McKinzey*, 641 F.3d at 892 (holding that error is harmless if the Court can predict with great confidence what the result on remand would be without the error). It is beyond dispute that the "one or two" episodes of decompensation cited in Dr. Regan's report are less than the three episodes a claimant must experience to meet Listings 12.04 or 12.09. And although Mr. Stalcup cites an additional twelve-day hospitalization he had for suicidal thoughts and psychotic symptoms in October 2007, [dkt. 24 at 14 (citing R. at 121)], that hospitalization did not last two weeks and did not occur within one year of the 2005 episodes so as to qualify as a third episode of decompensation as required by the regulations.[3] For these reasons, the Court concludes that although the ALJ misstated that Mr. Stalcup had not suffered any episodes of decompensation, any error is harmless.

---

[3] Mr. Stalcup does not argue that he experienced more frequent episodes of decompensation of shorter duration sufficient to trigger a judgment that the duration and functional effects of the shorter and more frequent episodes could be used to determine equivalency. *See* Listing 12.00(C)(4).

## 2. Failure to Summon a Medical Expert

Mr. Stalcup argues that the ALJ erred by not seeking the opinion of a medical advisor as to whether Mr. Stalcup met Listing 12.04 or 12.09. [Dkt. 24 at 14.]

Mr. Stalcup is correct that whether a claimant's impairment medically equals a listing must be based on medical findings because it is a medical judgment that requires an expert medical opinion that must be considered by the ALJ. *Barnett v. Barnhart*, 381 F.3d 664, 670 (7th Cir. 2004); 20 C.F.R. § 404.1526(b). But a medical advisor need not testify. *Boiles v. Barnhart*, 395 F.3d 421, 424 (7th Cir. 2005). According to SSR 96-6p, "[t]he administrative law judge is responsible for deciding the ultimate legal question whether a listing is met or equaled." That regulation further indicates that the signature of a State agency medical or psychological consultant on certain disability determination forms "ensures that consideration by a physician (or psychologist) designated by the Commissioner has been given to the question of medical equivalence at the initial and reconsideration level of administrative review." *See also Barnett*, 381 F.3d at 670-71 (holding that the completion of certain forms by a state agency physician satisfies the ALJ's duty to summon an expert when determining whether a claimant's impairment equals a Listing).

Mr. Stalcup ignores that State agency consultant Dr. Regan completed a Disability Determination and Transmittal Form and a Psychiatric Review Technique Form, which the ALJ relied on to make his decision. [R. 19, 172-83.] Dr. Regan considered Listings 12.04 and 12.09 but concluded that Mr. Stalcup did not establish the presence of the "C criteria", which required repeated episodes of decompensation, each of extended duration. [R. 175, 180, 183.] Additionally, Dr. Jane Cormier completed a Disability Determination and Transmittal Form and found Mr. Stalcup not to be disabled. [R. 21.] These forms satisfied the ALJ's obligation to

base his decision regarding whether Mr. Stalcup met or medically equaled a Listing on medical evidence.  Therefore, the Court rejects Mr. Stalcup's argument that the ALJ erred by not seeking the opinion of a medical advisor regarding the listings.

### C.  Credibility Determination

Mr. Stalcup argues that the ALJ failed to properly articulate the factors of SSR 96-7p in assessing his credibility.  [Dkt. 24 at 16.]  Specifically, Mr. Stalcup directs the Court to a portion of SSR 96-7p that lists seven factors for the ALJ to consider.  He contends that the ALJ failed to articulate his reasoning surrounding these factors.

The ALJ's credibility determination is entitled to special deference.  *Scheck v. Barnhart*, 357 F.3d 697, 703 (7th Cir. 2004); *Sims v. Barnhart*, 442 F.3d 536, 538 (7th Cir. 2006) ("Credibility determinations can rarely be disturbed by a reviewing court, lacking as it does the opportunity to observe the claimant testifying.").  Although the absence of objective evidence cannot, standing alone, discredit the presence of substantive complaints, *Parker v. Astrue*, 597 F.3d 920, 922-23 (7th Cir. 2010), when faced with evidence both supporting and detracting from claimant's allegations, the Seventh Circuit has recognized that "the resolution of competing arguments based on the record is for the ALJ, not the court."  *Donahue v. Barnhart*, 279 F.3d 441, 444 (7th Cir. 2002).  Consistent with Seventh Circuit authority, this Court will not disturb a credibility finding "unless it is 'patently wrong in view of the cold record.'"  *Pope v. Shalala*, 998 F.2d 473, 487 (7th Cir. 1993) ("[Because] the ALJ is in the best position to observe witnesses, [courts] usually do not upset credibility determinations on appeal so long as they find some support in the record and are not "patently wrong.").

When evaluating the credibility of an individual's statements, the ALJ must consider the entire case record and give specific reasons for the weight given to the individual's statements.

SSR 96-7p.  Under Social Security Ruling 96-7p, the ALJ must assess the following minimum factors:

> (1) The individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; and (6) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96-7p.  Whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the statements based on a consideration of the entire record.  20 C.F.R. §§ 404-1519 and 4165.929.

The root of Mr. Stalcup's claim is that the ALJ did not adequately detail his consideration of the seven factors of SSR 96-7p when making his negative credibility determination.  [Dkt. 24 at 16-19.]  Language from the ALJ's opinion illustrates the contrary, however.  Specifically, the ALJ made adequate findings concerning the mild difficulties Mr. Stalcup has in daily living, the moderate difficulties he has socially functioning, and the moderate difficulties he has staying on task and concentrating.  [R. 15.]  The ALJ noted that Mr. Stalcup can cook, button and zip things, and can lift 20 pounds occasionally but that he cannot manage money or grocery shop.  [*Id.*]  The ALJ discussed Mr. Stalcup's anxiety problems, paranoia, hallucinations, and triggers, as well as the effect those symptoms have on Mr. Stalcup's mood and ability to interact with others.  [*Id.*]  Although Mr. Stalcup argues that the ALJ did not adequately detail the medications he takes, the ALJ noted that Mr. Stalcup's medications "help with his symptoms."  [*Id.*]  This conclusion is supported by Mr. Stalcup's testimony at the hearing that his medication "helps a lot actually."  [R. 363.]  The ALJ detailed Mr. Stalcup's treatment, including weekly counseling he

was receiving before he was incarcerated. [R. 15.] For these reasons, contrary to Mr. Stalcup's argument, the Court concludes that the ALJ sufficiently considered the seven factors in SSR 96-7p.

Likewise, the ALJ's adverse credibility determination is well supported. The ALJ cited a psychiatric evaluation from Dr. Chad Schultheis observing many discrepancies in Mr. Stalcup's self-reporting of his symptoms. [R. 15.] For example, the ALJ cited Dr. Schultheis' observation that although Mr. Stalcup claimed to have memory issues, he was able to "describe in fairly specific details where he had lived in the past and how long he had been in each placement." [R. 15 (referring to R. 232).] The ALJ also cited Dr. Schultheis' conclusion that Mr. Stalcup presented himself in a very charming manner and "'tried to present a lot of difficulties which would make one feel very bad for him yet they did not seem to be based in truth.'" [R. 16 (quoting R. 235).] The ALJ noted that although Mr. Stalcup had previously reported receiving vocational rehabilitation, he admitted at the hearing that he had missed all of his appointments. [R. 17 (referencing R. 360-61).] Finally, the ALJ noted that Mr. Stalcup's reported substance abuse may have contributed to his symptoms. [R. 15.]

The Court concludes that the ALJ evaluated Mr. Stalcup's credibility using the seven factors required by SSR 96-7p and adequately supported his adverse credibility finding. Throughout the opinion, the ALJ provides reasons for discrediting Mr. Stalcup's allegations and builds an adequate logical bridge between the evidence and the result. Moreover, the ALJ (and Dr. Schultheis) were able to observe the claimant's demeanor, which this Court cannot do on a

paper record.  For all of these reasons, the Court rejects Mr. Stalcup's arguments and gives the ALJ's credibility determination the special deference it is owed.[4]

**D. Step Five Challenge**

Mr. Stalcup makes a cursory argument that the ALJ should not have asked the vocational expert to assume that he is limited to performing low stress jobs because the ALJ did not ask Mr. Stalcup "which demands of work or work-like settings are stressful to [him]."  [Dkt. 24 at 21.] Mr. Stalcup cites SSR 85-15, which explains that a claimant's mental condition may make performance of an unskilled job as difficult as an objectively more demanding job.

As the Commissioner points out, the ALJ did not include a low-stress limitation in the hypothetical he posed to the vocational expert, so Mr. Stalcup's argument that the ALJ didn't ask him about an acceptable stress level is moot.  Additionally, the Court notes that the hypothetical the ALJ posed to the vocational expert accounted for Mr. Stalcup's self-reported paranoia about being supervised and interacting with co-workers by controlling for a person who "could have occasional contact with co-workers and supervisors and no contact with the public."  [R. 386.] For these reasons, the Court rejects Mr. Stalcup's argument.

**V.**
**CONCLUSION**

The standard for disability claims under the Social Security Act is stringent.  "Even claimants with substantial impairments are not necessarily entitled to benefits, which are paid for by taxes, including taxes paid by those who work despite serious physical or mental impairments

---

[4] The Court recognizes that the ALJ used a variation of boilerplate language that the Seventh Circuit Court of Appeals recently criticized.  [R. 15]; *see, e.g.*, *Bjornson v. Astrue*, 2010 U.S. App. LEXIS 1790 *11-*15 (7th Cir. 2012).  Unlike the ALJ opinion at issue in *Bjornson*, which erroneously determined the claimant's ability to work and then used that to determine the claimant's credibility, the ALJ opinion at issue adequately considered the 96-7p factors and built a logical bridge supporting the adverse credibility determination regarding Mr. Stalcup.

and for whom working is difficult and painful." *Williams-Overstreet v. Astrue*, 364 Fed. Appx. 271, 274 (7th Cir. 2010). Furthermore, the standard of review of the Commissioner's denial of benefits is narrow. *Id.* Taken together, the Court can find no legal basis to overturn the Commissioner's decision that Mr. Stalcup does not qualify for disability benefits. Therefore, the decision below is **AFFIRMED**. Final judgment will be entered accordingly.

04/12/2012

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only**:

Charles D. Hankey
charleshankey@hankeylawoffice.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov